# SAI, LLC

## Operating Agreement For Limited Liability Company

This Operating Agreement is made by and among SAI, LLC ("LLC") and the persons signing this Agreement as members ("Members") and managers ("Managers") of the LLC. The parties agree as follows:

## ARTICLE 1. FORMATION

### Section 1.01. Organization of LLC

The Members have formed a LLC pursuant to the Oklahoma Limited Liability Company Act, Title 18 (Sections 2000 - 2060) of the Oklahoma Statutes. Articles of Organization have been filed with the Oklahoma Secretary of State.

### Section 1.02. Name of LLC

The name of the LLC is SAI, LLC. The business of the LLC shall be operated under that name or any other name for which the LLC has filed a fictitious business name statement.

### Section 1.03. Purpose of LLC

The principal purpose of the LLC shall be to engage in the business of real estate ownership and management and such other activities that are related or incidental thereto. The LLC may engage in any other lawful activities.

### Section 1.04. Principal Place of Business

The principal place of business of the LLC shall be 901 W. Main, Durant, Oklahoma. The Managers may change the principal place of business of the LLC by giving notice of the change of address to each Member.

### Section 1.05. Term of LLC

The term of the LLC shall commence on March 2, 2009, the date that the Articles of Organization were filed with the Oklahoma Secretary of State. The duration of the LLC shall be perpetual, unless terminated or dissolved as provided in this Agreement.

Defs.AP&KP-001

## ARTICLE 2. MEMBERS

### Section 2.01. Initial Members

The names and addresses of the initial Members of the LLC are set forth on Schedule A attached to this Agreement.

### Section 2.02. Liability of Members

The liability of the Members is restricted and limited to the amount of capital contributions that each Limited Member makes or agrees to make to the LLC. Except as provided in Sections 2017 and 2022, Title 18 of the Oklahoma Statutes, no Member shall be personally liable for the debts, obligations, liabilities or judgments of the LLC, whether arising in contract, tort or otherwise, solely by reason of being a Member of the LLC.

### Section 2.03. Voting Rights of Members

(a)**Majority Vote Required.** The following actions shall be taken by a vote of the holders of a majority of Membership Units:

(i) election and removal of Managers under Sections 3.01 and 3.02 of this Agreement;

(ii) determining salaries and other compensation of Managers and Members under Sections 7.01 and 7.02 of this Agreement;

(iii) approving the admission to membership of a Transferee or an assignee of an economic interest under Article 14 of this Agreement;

(iv) dissolution of the LLC under Section 15.01(b) of this Agreement;

(v) continuing the business of the LLC after a Member ceases to be a Member for any reason under Section 15.01(c) of this Agreement;

(vi) amending the Articles of Association or the Operating Agreement under Sections 16.01 and 16.02 of this Agreement;

(vi) a merger of the LLC under Section 2020, Title 18 of the Oklahoma Statutes.

(b)**Unanimous Vote Required.** The unanimous vote of all Members shall be required before the LLC may enter into agreements, commitments or obligations which increase the personal liability of Members who have not consented to assuming such personal liability.

(c)**Other Actions.** Except as otherwise provided in this Agreement, all other actions may be taken by the Managers by majority vote without approval of the Members, including the issuance of additional Membership Units.

Defs.AP&KP-002

### Section 2.04. Signing Documents

No Member, acting solely in his capacity as a Member, may bind the LLC or sign any document on behalf of the LLC.

## ARTICLE 3. MANAGERS

### Section 3.01. Election of Managers

The Members shall elect one (1) Manager to manage the business and affairs of the LLC. The Manager shall serve until her successor is duly elected and qualified. The Manager need not be a Member. In voting for Manager, each Member shall have a number of votes equal to the number of Membership Units owned by that Member. The initial Manager of the LLC, who have been elected by the holders of a majority of Membership Units, are the following persons:

Arvind C. Patel   [ X ] Member  [   ] Nonmember

Nayana Patel      [ X ] Member  [   ] Nonmember

### Section 3.02. Removal and Resignation

The Member may remove a Manager at any time, with or without cause, by vote of the holders of a majority of Membership Units. A Manager may resign at any time by giving written notice to the Members or to the other Managers. The Members may fill a vacancy caused by resignation or removal of a Manager by a vote of the holders of a majority of Membership Units.

### Section 3.03. Powers of Managers

The Manager shall have the sole and exclusive right to manage the business and affairs of the LLC except as otherwise provided in this Agreement. The Manager shall have the power and authority to take such action that they deem necessary, appropriate or convenient in connection with the management and conduct of the business and affairs of the LLC, including without limitation the power to:

(a) acquire real or personal property for the LLC;

(b) dispose of property, either in the ordinary course of the business or when the Manager determines that such disposition is in the best interests of the LLC;

(c) finance the LLC's activities by borrowing money from third parties on such terms and conditions that the Manager deem appropriate. When the LLC borrows money, the Manager is authorized to pledge, mortgage, encumber or grant a security interest in LLC properties as security for the repayment of the loan;

(d) employ, retain or otherwise secure the services of professionals or other persons; or

(e) take any and all other action permitted by law and which is customary or reasonably related to the conduct of the business of the LLC, including the powers set forth in Section 2019, Title 18 of the Oklahoma Statutes.

### Section 3.04. Standard of Care of Managers

The Managers shall exercise ordinary business judgment in managing the affairs of the LLC. The Managers shall not be liable or obligated to the Members for any mistake of fact or judgment made by the Managers in operating the business of the LLC that results in any loss to the LLC or its Members unless fraud, deceit or a wrongful taking is involved. The Managers do not in any way guarantee the return of the Members' capital or a profit from the operations of the LLC. The Managers shall not be responsible to any Member because of a loss of that Member's investment or a loss in operations, unless it is caused by fraud, deceit or a wrongful taking by the Managers.

### Section 3.05. Devotion of Time by Managers

The Managers shall devote such care, time and attention to the affairs of the LLC that is reasonably necessary. In this connection, the Members acknowledge that the Managers may be managers of other L.L.C.s, P.L.I..C.s, and general partners of other partnerships. The Managers may engage in other business of the type conducted by the LLC, whether or not competitive with the business of the LLC.

### Section 3.06. Voting Rights of Managers

When there is more than one Manager, decisions of the Managers shall be made by a majority vote of the Managers at a meeting, or by unanimous written consent.

### Section 3.07. Restrictions on Managers

Except as otherwise provided in this Agreement, the Managers shall be subject to all the restrictions imposed on managers by the Oklahoma Limited Liability Company Act, and shall have all the rights and powers granted to managers under that Act.

### Section 3.08. Liability of Managers

No Manager shall be personally liable for the debts, obligations, liabilities or judgments of the LLC, whether arising in contract, tort or otherwise, solely by reason of being a Manager or officer of the LLC.

## ARTICLE 4. CONTRIBUTIONS AND CAPITAL ACCOUNTS

### Section 4.01. Initial Capital Contributions

Each Member shall contribute to the capital of the LLC cash, property or services or a combination thereof, in the amount set forth on Schedule A attached to this Agreement. A Member's interest in the

Defs.AP&KP-004

LLC shall be evidenced by Units. Units shall initially be issued for cash, property or services or a combination thereof, in the amount of $1.00 per Unit. The number of Units owned by each Member is set forth on Schedule A attached to this Agreement.

### Section 4.02. Additional Capital Contributions

The Managers may issue additional Units to existing Members and new Members. The Managers shall determine the consideration to be issued for such Units. The Units need not be issued for the same type or amount of consideration.

The Members shall not be required to make additional capital contributions, but may make additional capital contributions with the consent of the Managers.

### Section 4.03. Interest on Contributions

No interest shall be paid on contributions to the capital of the LLC.

### Section 4.04. Withdrawal and Return of Capital

A Member may withdraw from the LLC at any time. No Member shall have the right on withdrawal from the LLC for any reason to withdraw any portion of the capital of the LLC or to a return of that Member's capital contribution, except upon dissolution of the LLC under Section 15.03 of this Agreement.

If there is a withdrawal of a Member that does not cause a dissolution of the LLC, the LLC shall not be required to buy back the Membership Units of the withdrawing Member or to return that Member's capital account balance.

### Section 4.05. Capital Accounts

The LLC shall establish a capital account for each Member (and for each Transferee who has not become a Member).

The capital account for each Member shall be increased by (a) the cash contributed by the Member to the LLC, (b) the fair market value of property contributed by the Member to the LLC, as determined by the Member and the LLC at the time of contribution, net of liabilities encumbering the property or assumed by the LLC, ( c) the fair market value of services contributed by the member to the LLC, (d) the amount of income and gain allocated by the LLC to the Member, including income and gain exempt from tax, and (e) the amount of any liability guaranteed by the Member(s).

The capital account for each Member shall be decreased by (a) cash distributions from the LLC to the Member, (b) the fair market value of property distributed to the Member, as determined by the LLC and the Member at the time of distribution, net of any liabilities encumbering the property or assumed by the Member, (c) the amount of losses and deductions allocated by the LLC to the Member, and (d) the amount of any liabilities of the Member(s) assumed or guaranteed by the LLC.

Defs.AP&KP-005

If a Member transfers Units in accordance with Article 13, the capital account attributable to the transferred Units shall carry over to the new owner of the Units.

## ARTICLE 5. ALLOCATIONS

### Section 5.01. Allocation of Profits and Losses

The net profits and net losses of the LLC, and other items of income, gain, loss, deductions and credits, shall be allocated to the Members in proportion to the number of Membership Units owned by each Member compared to the number of Membership Units owned by all Members.

The LLC's net profits and losses, and all other items of income, gain, loss, deductions and credits, shall be determined by the accountant regularly engaged by the LLC to audit the books and records of the LLC. The determination shall be made as soon as practical after the close of the calendar year.

### Section 5.02. Allocations for Contributed Property

If a Member contributes property to the LLC that has a tax basis different from its capital account value, then the LLC shall make the special allocations required by Section 704(c) of the Internal Revenue Code. These special allocations apply solely for tax purposes and not for accounting or capital account purposes. Section 704(c) requires the following two special allocations with respect to contributed property:

(a) If the LLC sells the property, the built-in gain or loss shall be allocated to the Member who contributed the property. Built-in gain is the amount by which the value assigned to the property for capital account purposes exceeds the tax basis of the property on the date of contribution. Built-in loss is the amount by which the tax basis of the property exceeds the capital account value of the property on the date of contribution.

(b) Tax depreciation on the property shall be allocated to the non-contributing Members in an amount that is at least equal to the book depreciation allocable to such Members. This allocation shall give the non-contributing Members the same tax depreciation deductions that they would have received if the property had been contributed with a tax basis equal to the assigned capital account value.

### Section 5.03. Special Allocations

There are no special allocations as of the date of this Agreement.

During any year in which special allocations are made, the LLC shall comply with the safe-harbor guidelines for special allocations under Section 1.704-1 of the Income Tax Regulations. The LLC shall use the alternative safe-harbor test under Section 1.704-1(b)(2)(ii) of the Income Tax Regulations (the Qualified Income Offset referred to below) so that the Members will not be required to restore deficit account balances on dissolution of the LLC. The accountant for the LLC shall comply with the following safe-harbor guidelines in making these allocations:

(a)**Capital Accounts**. The LLC shall maintain capital accounts for each Member in accordance with Section 4.05 of this Agreement, adjusted as required under Section 1.704-1(b)(2)(iv) of the Income Tax Regulations. Under those regulations, the following adjustments to capital accounts shall be made:

(i) LLC assets shall be revalued for book purposes whenever new assets are contributed to the LLC. The capital accounts shall reflect the fair market value of property contributed to the LLC.

(ii) The amount of depreciation for book purposes shall be based upon tax depreciation multiplied by a fraction, the numerator of which is the book value of the assets on the date of contribution and the denominator of which is the tax basis.

(iii) Assets shall be revalued (booked up or down) for capital account purposes whenever there is a distribution. The distributed assets shall be treated as sold for fair market value for book (non-tax) purposes. The gain or loss shall be allocated to the Members' capital accounts. If the LLC distributes an asset to one of the Members, the LLC shall treat the distribution as a sale to that Member, with all of the book gain or loss allocated to the other Members.

(b)**Liquidating Distributions**. Liquidating distributions shall be made in accordance with Members' positive capital account balances.

(c)**Restrictions on Allocations**. Allocations may not cause or increase a deficit balance in a Member's capital account as of the end of the year in which the allocation is made. The amount of any allocation that creates a negative capital account balance must be allocated to the other Members.

In applying this rule, the safe-harbor regulations provide that Members' capital accounts must first be reduced by the following "expected" amounts:

(i) all reasonably expected future depletion adjustments for oil and gas depletion;

(ii) all reasonably expected future allocations of loss or deduction mandated by certain Code provisions that may override 704(b) of the Internal Revenue Code; and

(iii) all reasonably expected future distributions that, as of the end of the year, exceed reasonably expected increases in the member's capital account.

The Members understand that, as of the date of this Agreement, there are no reasonably expected adjustments, allocations or distributions. There are no projected or scheduled adjustments, allocations or distributions. Therefore, there will be no special reductions in the Members' capital accounts in applying the safe-harbor test for special allocations.

(d)**Qualified Income Offset**. If a Member receives an "unexpected" adjustment, allocation or distribution which causes or increases a deficit balance in the Member's capital account, then there shall be a special allocation of income and gain to the Member in order to eliminate the deficit as quickly as possible. Future allocations of income and gain to the Member under the normal provisions of this Agreement shall be reduced by the amount of this special allocation.

Defs.AP&KP-007

"Unexpected" adjustments, allocations and distributions are all adjustments, allocations and distributions other than the three types of "expected" adjustments, allocations and distributions referred to in subparagraph (c) above. The Members understand that all adjustments, allocations and distributions will normally be treated as "unexpected" for purposes of this rule since there are no scheduled or projected adjustments, allocations or distributions.

## Section 5.04. Special Allocations for Nonrecourse Property

If the LLC purchases property with a nonrecourse loan, then the LLC shall comply with the safe-harbor guidelines for nonrecourse allocations under Section 1.704-2 of the Income Tax Regulations. Under these regulations, the following rules shall apply: ·

(a) **General Rules.** All of the safe-harbor requirements for special allocations under Section 6.03 of this Agreement shall apply. The LLC shall maintain capital accounts, liquidating distributions shall be made in accordance with positive capital account balances, and there shall be a qualified income offset.

(b)**Reasonably Consistent Requirement.** Nonrecourse deductions shall be allocated in a manner that is reasonably consistent with allocations that have substantial economic effect of some other significant LLC item attributable to the property securing the nonrecourse liabilities. This determination shall be made by the accountant for the LLC after consultation with the Managers.

(c)**Minimum Gain Chargeback**. The minimum gain chargeback rules under Section 1.704-2 of the Income Tax Regulations shall apply. There are two types of minimum gain chargebacks, LLC minimum gain chargebacks and member minimum gain chargebacks.

**LLC Minimum Gain Chargeback.** LLC minimum gain is the gain that would be recognized if the LLC abandoned the property or gave the property back to the lender without any additional consideration. The minimum gain that would be realized in such case is equal to the amount by which the nonrecourse debt encumbering the property exceeds the book value of the property. When the LLC pays down a nonrecourse debt, or abandons or sells the property subject to the nonrecourse debt, the minimum gain is reduced (since there is less potential gain that would be recognized if the LLC abandoned the property). If there is a decrease in LLC minimum gain during the year, each Member must be allocated items of income and gain for the year equal to that Member's share of the decrease in minimum gain. If the LLC does not have sufficient income or gain during the year to make this special allocation, the special allocation shall be made during the following year. A Member's share of minimum gain and the decrease in minimum gain is based upon the amount of nonrecourse deductions and distributions of the proceeds of nonrecourse financing to the Member which caused the minimum gain (i.e., which caused the book value of the property to decline below the amount of nonrecourse debt encumbering the property).

**Member Minimum Gain Chargeback.** The member minimum gain chargeback provisions under the safe-harbor regulations shall apply if a Member bears the risk of loss on debt that is nonrecourse as to the LLC. This will occur if a Member guarantees an LLC loan or loans money to the LLC for the purchase of property. In such cases, all of the depreciation and other deductions from the property must be allocated to the Member who bears the risk of loss if the loan is not repaid. There is "member minimum gain" under the safe-harbor regulations if the liabilities encumbering the property exceed the book value of the property. There will be a decline in member minimum gain as the loan is repaid or if

Defs.AP&KP-008

the property is sold or abandoned. Under the member minimum gain chargeback rules, the Member receiving the nonrecourse deductions which caused the book value of the property to decline below the liabilities encumbering the property must be allocated items of income and gain equal to the decrease in member minimum gain.

## Section 5.05. Allocations in Respect of Transferred Units and New Units Issued

If Membership Units are transferred, or if a Member's percentage interest in the LLC is increased or decreased as a result of the issuance of additional Units or otherwise, each item of income, gain, loss, deduction and credit of the LLC during such fiscal year shall be assigned pro rata to each day in the year to which such items are attributable (i.e., the day on or during which it is accrued or otherwise incurred). The amount of each such item so assigned shall be allocated to the Members based on the Membership Units owned by each Member at the close of the day.

However, for the purpose of accounting convenience and simplicity, the LLC shall treat such transfer of a Unit, or increase or decrease in a Member's percentage interest, which occurs at any time during a semi-monthly period as having taken place on the last day of the semi-monthly period. Sales, dispositions and issuances of Units which take place during the first 15 days of a month shall be treated as having been made on the 15th day of the month. All other sales, dispositions and issuances of Units shall be treated as having been made on the last day of the month.

Notwithstanding the foregoing, gain or loss realized by the LLC on the sale or other disposition of assets of the LLC shall be allocated solely to the Members owning Units as of such date.

## ARTICLE 6. DISTRIBUTIONS

## Section 6.01. Amount and Time of Distributions

The Managers shall distribute cash available for distribution to the Members at such time that the Managers deem advisable. In determining the amount of cash available for distribution, the Managers shall set aside a reasonable allowance for anticipated expenses, contingencies, capital needs and other reserves and costs incident to the business of the LLC. The Managers shall normally distribute to Members each year an amount that is at least equal to the income taxes that the Members are required to pay on their distributive share of income and gain.

## Section 6.02. Allocation of Distributions

Distributions shall be made to Members in proportion to the number of Membership Units owned by each Member compared to the number of Units owned by all Members.

## Section 6.03. Distributions Other Than Cash

Defs.AP&KP-009

No Member shall have the right to receive property other than money upon the distribution of profits or cash available for distribution. No Member may be compelled to accept a distribution of any asset in kind in lieu of a proportionate distribution of money being made to the other Members. Except on dissolution and winding up of the LLC, no Member may be compelled to accept a distribution of any asset in kind.

## Section 6.04. Priorities Among Limited Members

No Member shall be entitled to any priority or preference over any other Member as to the distribution of cash available for distribution or as to the return of capital on dissolution of the LLC.

## Section 6.05. Restrictions on Distributions

No distribution shall be made if, after giving effect to the distribution:

(a) the LLC would not be able to pay its debts as they become due in the usual course of business; or

(b) the LLC's total assets would be less than the sum of its total liabilities.

# ARTICLE 7. COMPENSATION OF MANAGERS AND MEMBERS

## Section 7.01. Salaries of Managers

The Managers shall be entitled to salaries, wages or other compensation only if approved in advance by the holders of a majority of Membership Units.

## Section 7.02. Salaries of Members

The Members shall be entitled to salaries, wages or other compensation only if approved in advance by the holders of a majority of Membership Units.

# ARTICLE 8. MEETINGS OF MEMBERS

## Section 8.01. Place of Meetings

Meetings of Members shall be held at the principal executive office of the LLC, or at such other place within Oklahoma selected by the persons calling the meeting.

## Section 8.02. Call of Meetings

Meetings may be called pursuant to the written request of the Managers or of Members holding more than ten percent of the Membership Units. Meetings may be called for consideration of any of the matters as to which Members are entitled to vote under this Agreement or under the Oklahoma Limited Liability Company Act. The call of the meeting shall specify the time of the meeting, which shall not be

Defs.AP&KP-010

less than 10 nor more than 60 days after delivery of the written request for the meeting to one or more Managers.

## Section 8.03. Notice of Meeting

Whenever Members are required or permitted to take action at a meeting, the Managers shall give written notice of the meeting not less than 10 nor more than 60 days before the date of the meeting to each Member entitled to vote at the meeting. The notice shall state the place, date and hour of the meeting and the general nature of the business to be transacted. No other business may be transacted at the meeting, unless approved by all Members.

Whenever the Managers receive a request for a meeting in accordance with Section 8.02 of this Agreement, the Managers shall immediately give notice of the meeting to Members. The notice shall specify that the meeting will be held at the time specified by the person calling the meeting. If the Managers do not give notice within 20 days after receipt of the request, the person calling the meeting may give notice.

Notice of the meeting shall be given personally, by mail or by other means of written communication. The notice shall be addressed to each Member at the address appearing on the books of the LLC for the Member or the address given by the Member to thé LLC for the purpose of notice. The notice shall be deemed to have been given at the time when delivered personally, deposited in the mail, or sent by other means of written communication.

## Section 8.04. Quorum

The holders of a majority of Membership Units represented in person or by proxy shall constitute a quorum at any duly held or called meeting of Members. The Members present at such meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough Members to leave less than a quorum, if any action taken other than adjournment is approved by the requisite vote of Members.

## Section 8.05. Adjournment of Meetings

A meeting of Members may be adjourned to another time or place. Any business which might have been transacted at the original meeting may be transacted at the adjourned meeting. If a quorum is not present at an original meeting, that meeting may be adjourned by the vote of the holders of a majority of Units represented either in person or by proxy. Notice of the adjourned meeting need not be given to Members entitled to notice if the time and place of the adjourned meeting are announced at the meeting at which the adjournment is taken. However, notice of the adjourned meeting shall be given to each Member if the adjournment is for more than 45 days or if, after the adjournment, a new record date is fixed for the adjourned meeting.

## Section 8.06. Meetings Not Duly Called, Noticed or Held

The transactions of any meeting of Members, however called and noticed, and wherever held, shall be as valid as though taken at a meeting duly held after regular call and notice, if a quorum is present at that meeting, either in person or by proxy, and if, either before or after the meeting, each of the persons

Defs.AP&KP-011

entitled to vote, not present in person or by proxy, signs a written waiver of notice, a consent to the holding of the meeting, or an approval of the minutes of the meeting. Attendance by a Member at a meeting shall constitute waiver of notice, except when that Member objects at the beginning of the meeting to the transaction of any business on the ground that the meeting was not lawfully called or convened. Attendance at a meeting is not a waiver of any right to object to the consideration of matters required to be described in the notice of the meeting and not so included, if the objection is expressly made at the meeting.

## Section 8.07. Conference Telephone

Members may participate in a meeting through the use of conference telephones or similar communications equipment if all Members participating in the meeting can hear each other.

## Section 8.08. Statement of Proposal

Any action approved at a meeting, other than by unanimous approval, shall be valid only if the general nature of the proposal so approved was stated in the notice of meeting or in any waiver of notice.

## Section 8.09. Consent to Action Without Meeting

Any action that may be taken at any meeting of the Members may be taken without a meeting if a consent in writing, setting forth the action so taken, is signed and delivered to the Managers of the LLC within 60 days of the record date for that action by Members having not less than the minimum number of votes that would be necessary to authorize or take that action at a meeting at which all Members entitled to vote thereon were present and voted.

## Section 8.10. Proxies

(a) Every Member entitled to vote may authorize another person or persons to act by proxy for that Member.

(b) No proxy shall be valid after the expiration of 11 months from the date of the proxy unless otherwise provided in the proxy.

(c) A Member may revoke a proxy by a writing stating that the proxy is revoked, by a subsequent proxy signed by the Member, or by attendance and voting at a meeting by the Member who signed the proxy.

(d) The Managers may, in advance of any meetings of Members, prescribe additional regulations concerning the manner of signing and filing of proxies and their validation.


## ARTICLE 9. MEETINGS OF MANAGERS

Section 9.01. General

Defs.AP&KP-012

When there is more than one Manager, the provisions set forth in this Article shall govern meetings of Managers.

### Section 9.02. Time of Meetings

Meetings of Managers shall be held when meetings are called pursuant to Section 9.03 of this Agreement.

### Section 9.03. Call of Meetings

Meetings may be called pursuant to the written request of one or more Managers. Meeting may be held for consideration of any of the matters as to which Managers are entitled to vote under this Agreement or under the Oklahoma Limited Liability Company Act.

### Section 9.04. Notice, Time and Place of Meeting

The Manager or Managers calling a meeting shall give notice of the meeting to all Managers at least 48 hours prior to the meeting. The notice shall state the time and place of the meeting. The notice shall be given by facsimile, personal delivery, telephone or mail. If the notice is given by mail, the notice shall be sent at least four days prior to the meeting.

Meetings of the Members shall be held at the principal office of the LLC or at any place designated by the Managers calling the meeting.

### Section 9.05. Quorum

A majority of the Managers present in person or by conference telephone shall constitute a quorum at a meeting of Managers.

### Section 9.06. Meetings Not Duly Called, Noticed or Held

The transactions of any meeting of Managers, however called and noticed, shall be as valid as though taken at a meeting duly held after regular call and notice, if (a) all Managers are present at the meeting and sign a written consent to the holding of the meeting, (b) all Managers are present at the meeting and do not protest prior to the meeting that the meeting was not properly called or noticed, or (c) a majority of the Managers are present at the meeting, either in person or by conference telephone, and those not present sign a waiver of notice and consent to the meeting either before or after the meeting.

### Section 9.07. Consent to Action Without Meeting

Any action that may be taken at any meeting of the Managers may be taken without a meeting if all of the Managers sign a consent in writing, setting forth the action so taken.

## ARTICLE 10. BOOKS, RECORDS AND BANK ACCOUNTS

### Section 10.01. Accounting Practices

Defs.AP&KP-013

The LLC shall use the cash method of accounting. The fiscal year of the LLC is the year ending December 31st.

## Section 10.02. Financial Statements

The Managers shall maintain true and proper books, records, reports and accounts in which all transactions of the LLC shall be accurately entered. The Managers shall issue an annual report to Members containing a balance sheet as of the end of each fiscal year and an income statement for each fiscal year. The Managers shall send a copy of that annual report to each Member not later than 120 days after the close of each fiscal year.

## Section 10.03. Maintenance of Records

The Managers shall maintain at the principal office of the LLC within Oklahoma all of the following records:

(a) a current list of the full name and last known business or residence address of each Member and each Transferee who has not yet become a Member, set forth in alphabetical order, together with the contribution and the share in profits and losses of each Member and Transferee;

(b) a current list of the full name and business or residence address of each Manager;

(c) a copy of the Articles of Organization and all amendments thereto, together with any powers of attorney pursuant to which the Articles of Organization or amendments were signed;

(d) copies of the LLC's federal, state and local income tax or information returns and reports for the six most recent taxable years;

(e) a copy of the Operating Agreement and all amendments thereto, together with any powers of attorney pursuant to which the Operating Agreement or amendments thereto were signed;

(f) copies of the financial statements of the LLC for the six most recent fiscal years; and

(g) the books and records of the LLC for the current and past four fiscal years.

## Section 10.04. Access to Records and Inspection Rights

(a) Request for Documents. Each Member and Transferee (and their representatives) may, upon reasonable request to the Managers and for purposes reasonably related to such person's interest in the LLC, obtain copies of the following documents at the expense of the LLC;

(i) a current list of the full name and last known business or residence address of each Member and each Transferee who has not yet become a Member, set forth in alphabetical order, together with the contribution and the share in profits and losses of each Member and Transferee;

(ii) a current list of the full name and business or residence address of each Manager;

Defs.AP&KP-014

(iii) the LLC's federal, state and local income tax or information returns and reports for the six most recent taxable years; and

(iv) the Articles of Organization, Operating Agreement and all amendments thereto.

(b)**Other Inspection Rights.** Each Member, Manager and Transferee shall have the right, for purposes reasonably related to such persons' interest in the LLC, to each of the following:

(i) to inspect and copy, during normal business hours, any records the LLC is required to maintain pursuant to Section 10.03 of this Agreement; and

(ii) obtain from the Managers, promptly after becoming available, a copy of the LLC's federal, state and local income tax or information returns for each year.

(c)**Over 35 Members.** If the LLC ever has more than 35 Members, the following additional reporting and inspection rights shall apply:

(i) The Managers shall send an annual report to each of the Members not later than 120 days after the end of the fiscal year. The annual report shall contain a balance sheet and an income statement and statement of changes in financial position for the fiscal year.

(ii) Members representing at least five percent of the voting interests of Members, or three or more Members may make a written request to a Manager for an income statement of the LLC for the initial three-month, six-month or nine-month period of the current fiscal year ended more than 30 days prior to the date of the request, and a balance sheet of the LLC as of the end of that period. The statement shall be delivered or mailed to the Members within 30 days thereafter.

(iii) The financial statements referred to in subparagraphs (c)(i) and (ii) shall be accompanied by the report, if any, of the independent accountants engaged by the LLC. If there is no report or independent account, the financial statements shall be accompanied by a certificate of a Manager of the LLC that the financial statements were prepared without audit from the books and records of the LLC.

(d)**Tax Information.** The Manager shall send to each Member and Transferee within 90 days after the end of each fiscal year such information that is necessary to complete federal and state income tax or information returns. If the LLC has 35 or fewer Members, the Managers shall send a copy of the LLC's federal, state and local income tax or information returns for the year.

Section 10.05. Banking

The Managers shall open and maintain one or more bank accounts in the name of the LLC. All of the funds of the LLC shall be deposited in the bank accounts. No other funds shall be deposited in the accounts. The funds in the LLC bank accounts shall be used solely for the business of the LLC. All

withdrawals from the bank account shall be made only on checks signed by the Managers or such other persons as the Managers may from time to time designate.

## ARTICLE 11. LLC CERTIFICATES

### Section 11.01. LLC Certificates

The Managers may in their discretion issue certificates evidencing the Units owned by each Member. The certificates shall be signed by one or more Managers or officers, whose signature may be a facsimile.

### Section 11.02. Restrictive Legend

Each LLC certificate shall bear the following restrictive legend, in addition to any other legend that may be required by state and federal securities laws:

THE UNITS REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER PURSUANT TO THE TERMS OF AN OPERATING AGREEMENT ENTERED INTO BY THIS LLC AND THE HOLDER HEREOF, A COPY OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE LLC.

## ARTICLE 12. TAXES

### Section 12.01. Tax Matters Partner

The Managers shall designate one of the Managers to be the "tax matters partner" pursuant to Section 6231(a)(7) of the Internal Revenue Code. If there is only one Manager, that person shall be the tax matters partner. The tax matters partner shall take such action that is necessary to make each Member a "notice partner" pursuant to Section 6223 of the Internal Revenue Code. The tax matters partner may not take any action authorized under Sections 6222 through 6232 of the Internal Revenue Code without the consent of the Managers.

### Section 12.02. Tax Elections

The Managers may make any tax elections under the Internal Revenue Code or the tax laws of any applicable state or local jurisdiction, including the following:

(a) adoption of December 31st as the end of the LLC's fiscal year;

(b) adoption of the cash method of accounting;

(c) amortization of the organizational and startup expenses of the LLC under Section 195 of the Internal Revenue Code ratably over a period of 60 months as permitted by Section 709(b) of the Code;

Defs.AP&KP-016

(d) adjustment of the basis of property of the LLC if the LLC distributes property under Section 734 of the Internal Revenue Code or if a Member transfers a Membership Unit under Section 743 of the Code. The Managers may in their sole discretion decide not to make such an election; and

(e) any other election that the Managers deem appropriate and in the best interests of the LLC.

## ARTICLE 13. TRANSFER OF MEMBERSHIP INTERESTS; ADMISSION OF NEW MEMBERS

### Section 13.01. Conditions for Transfer

A Member may not sell, assign, transfer, encumber or otherwise dispose of Membership Units except pursuant to the provisions of this Article 13. Transfers without compliance with this Agreement shall be treated as void.

### Section 13.02. Transfers to Family Members

A Member may transfer Units by inter vivos gift, testamentary disposition or sale to a Family Member, or to a trust for the benefit of Family Members, if (a) the Managers consent to the transfer, which consent shall not be unreasonably withheld, and (b) the transferee complies with Section 13.07 of this Agreement. A Family Member shall mean a Member's spouse, parents, siblings, in-laws, children or grandchildren.

### Section 13.03. Transfers to Existing Members

A Member may sell or transfer Units to another Member if the transferee complies with Section 13.07 of this Agreement.

### Section 13.04. Sales to Third Parties

A Member may sell or transfer Units to a person other than a Family Member (as defined in Section 13.02) or existing Member upon compliance with the following conditions:

(a) **Offer to Purchase.** If a Member decides to sell Membership Units and receives a bona fide offer for the purchase of all or a part of such Units, the Member shall either refuse the offer or give the Managers written notice setting forth full details of the offer. The notice shall specify the name of the offeror, the number of Units covered by the offer, the terms of payment, and all other material terms and conditions of the offer.

(b) **Right of First Refusal.** Upon receipt of the notice of sale, the Managers shall send a copy of the notice to all Members. The Members shall have the exclusive right and option, exercisable at any time during a period of 30 days from the date of the notice, to purchase the Units covered by the offer at the same price and on the same terms and conditions set forth in the notice. If there is more than one purchasing Member, each purchasing Member shall be entitled to purchase the offered Units based on the number of Units owned by that Member compared to the number of Units owned by all purchasing Members. If the purchasing Members do not purchase all of the offered Units, the selling Member may sell the remaining Units on the terms and conditions set forth in the notice of sale.

(c) **Rights of Transferee.** A transfer to anyone who is not already a Member or a Family Member (as defined in Section 13.02) shall give the transferee an economic interest in the LLC (the right to receive distributions and allocations of income, gains, losses, deductions, credits or similar items to which the Member would have been entitled to receive prior the sale or other transfer). The transferee shall not become a Member after the sale unless (i) the holders of a majority of Membership Units consent to the transferee becoming a Member; and (ii) the transferee complies with Section 13.07 of this Agreement.

## Section 13.05. Death, Bankruptcy or Incompetence

(a)**Option to Purchase.** If a Member dies, or is adjudged incompetent or bankrupt by a court of competent jurisdiction, the remaining Members shall have a right of first refusal to purchase the Membership Units of any successor in interest in accordance with Section 13.04 of this Agreement when such successor in interest sells or transfers the Membership Units.

(b) **Interest of Successor in Interest.** The successor in interest shall receive only an economic interest in the LLC (the right to receive distributions and allocations of income, gains, losses, deductions, credits or similar items to which the Member would have been entitled to receive prior to death, bankruptcy or incompetence). The successor in interest shall not become a Member unless (i) the holders of a majority of Membership Units consent to the successor in interest becoming a Member; and (ii) the successor in interest complies with Section 13.07 of this Agreement.

(c) **Exercise of Rights by Legal Representative.** If a Member who is an individual dies or is adjudged by a court of competent jurisdiction to be incompetent to manage the Member's person or property, the Member's executor, administrator, guardian, conservator or other legal representative may exercise all of the Member's rights for the purpose of settling the Member's estate or administering the Member's property, including any power the member had under the Articles of Organization or this Agreement.

## Section 13.06. Assignment of Economic Interest

(a)**Right to Assign.** A Member may not assign an economic interest in a Membership Unit without transferring the entire Membership Unit unless the Member obtains the consent of the Managers.

(b)**Rights of Assignee.** An assignment of an economic interest does not dissolve the LLC, entitle the assignee to vote or participate in the management and affairs of the LLC, entitle the assignee to vote or participate in the management and affairs of the LLC, or allow the assignee to become or exercise any rights of a Member. An assignment of an economic interest only gives the assignee an economic interest in the LLC (the right to receive, to the extent assigned, the distributions and the allocations of income, gains, losses, deductions, credits or similar items to which the assignor would have been entitled to receive). The assignee may become a Member if (i) the holders of a majority of Membership Units consent to the assignee becoming a Member; and (ii) the assignee complies with Section 13.07 of this Agreement.

(c)**Effect of Assignment.** Upon the assignment of all or part of an economic interest, the assignor shall provide the Managers with the name and address of the assignee and the details of the interest assigned. Upon receipt of that notice, the Managers shall amend the list. Until the assignee becomes a Member,

Defs.AP&KP-018

the assigning Member shall continue to be a Member and to have the power to exercise any rights and powers of a Member, including the right to vote.

(d)**Liabilities.** Except to the extent assumed by agreement, the assignee shall have no liability to the LLC prior to becoming a Member solely as a result of the assignment.

(e)**Encumbrances.** The pledge of or granting of a security interest, lien or other encumbrance in or against a Membership Unit shall not cause the Member to cease to be a Member or give to anyone else the power to exercise any rights or powers of a Member.

## Section 13.07. Restrictions on All Transfers

No transfer may be made to any person unless all of the following requirements have been met:

(a) The transferee agrees to be bound by all of the restrictions and provisions of this Agreement.

(b) The transfer does not violate any state or federal securities laws. The Managers may require the Member or transferee to obtain an opinion of counsel that the transfer is being made in compliance with the applicable state and federal securities laws.

(c) The transferee pays any reasonable expenses in connection with the transfer.

(d) The transfer, when added to the total of all other Units sold, assigned or transferred during the preceding 12-month period, does not result in a termination of the LLC under Section 708 of the Internal Revenue Code. An LLC is terminated under Section 708 if there is a sale or exchange of 50 percent or more of the Membership Units during any 12-month period.

## Section 13.08. Liabilities of Transferee Member.

A transferee who becomes a Member shall not be obligated for liabilities unknown to the transferee at the time the transferee became a Member and that could not have been ascertained from the Articles of Organization or this Agreement.

## ARTICLE 14. INDEMNIFICATION

### Section 14.01. Indemnification in Actions by Third Parties

The LLC shall have power to indemnify any person who was or is a party or is threatened to be made a party to any proceeding, by reason of the fact that such person is or was a Manager, Member, employee, officer or agent of the LLC, against expenses, judgments, fines, settlements and other amounts actually and reasonably incurred in connection with such proceeding. The indemnification shall be made only if the Managers determine that the person acted in good faith and in a manner such person reasonably believed to be in the best interests of the LLC. The termination of any proceeding by judgment, order, settlement, conviction or plea of nolo contender shall not by itself create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in the best interests of the LLC.

Defs.AP&KP-019

## Section 14.02. Advance of Expenses

The LLC shall have the power to advance expenses incurred in defending any proceeding prior to the final disposition of such proceeding.

## Section 14.03. Liability of Members

The amount of indemnification shall be limited to the assets of the LLC. No Member shall be personally liable as a result of an agreement by the LLC to indemnify any person.

# ARTICLE 15. TERMINATION AND DISSOLUTION

## Section 15.01. Dissolution Events

The LLC shall be dissolved, and its affairs shall be wound up, upon any of the following events:

(a) the expiration of the term provided for the existence of the LLC in Section 1.05 of this Agreement;

(b) the consent to dissolve by the holders of a majority of Membership Units;

(c) the death, withdrawal, resignation, expulsion, bankruptcy or dissolution of a Member or the occurrence of any other event that terminates a Member's continued membership in the LLC, unless the holders of a majority of Membership Units and a majority of capital interests agree in writing within 90 days thereafter to continue the LLC and there are at least two remaining Members;

(d) a decree of judicial dissolution under Section 2038, Title 18 of the Oklahoma Statutes.

## Section 15.02. Responsibility for Winding Up

Upon dissolution of the LLC, the business of the LLC shall be wound up by the Manager. If there is no remaining Manager, the business of the LLC shall be wound up by the Members.

## Section 15.03. Liquidation and Distribution

The persons responsible for winding up the affairs of the LLC shall liquidate the assets of the LLC as promptly as possible, consistent with obtaining a reasonable value for the assets. The liquidation proceeds shall be distributed in the following order:

(a) to creditors of the LLC other than Members;

(b) to Members who are creditors for unpaid loans and advances to the LLC;
(c) to any reserve that the Managers deem reasonably necessary for contingent or unforeseen liabilities or obligations of the LLC;

(d) to the Members in accordance with their positive capital account balances;

(e) to the Members in proportion to the Membership Units owned by each Member compared to the Membership Units owned by all Members.

## Section 15.04. Filing Dissolution Documents

Upon dissolution of the LLC, the Managers or person winding up the business of the LLC shall sign and file in the office of the Oklahoma Secretary of State of the State the following:

(a) Articles of Dissolution.

## ARTICLE 16. AMENDMENT

### Section 16.01. Amendment of Articles of Organization

The Articles of Organization may be amended by the vote of the holders of a majority of Membership Units.

### Section 16.02. Amendment of Operating Agreement

This Operating Agreement may be amended by the vote of the holders of a majority of Membership Units.

## ARTICLE 17. SECURITIES LAWS

### Section 17.01. Oklahoma Securities Laws

The Members who are acquiring Units by original issuance (rather than by transfer) certify that:

(a) They have (i) a preexisting personal or business relationship with the LLC or one or more of its officers, Managers or control persons, or (ii) the capacity to protect their own interests in connection with the LLC and the acquisition of Units by reason of their business or financial experience or the business or financial experience of the their professional advisors who are unaffiliated with and who are not compensated by the LLC or any affiliate or selling agent of the LLC, directly or indirectly,

(b) They are acquiring the Units for their own account (or for a trust account if the Member is a trust) and not with a view to or for sale in connection with any distribution of the Units.

### Section 17.02. Other Investment Representations

Each Member also represents, acknowledges or understands that:
(a) The Member is a bona fide resident of the State of Oklahoma.

(b) The Member is financially able to bear the economic risk of an investment in the LLC, including a total loss of the investment.

Defs.AP&KP-021

(c) The LLC is newly organized and has no financial or operating history. The Membership Units are a highly speculative investment and involve a high degree of risk of loss.

(d) The Member has received and reviewed all information that the Member considers necessary or appropriate in deciding whether to acquire the Membership Units. The Member has had an opportunity to ask question and receive answers from the LLC and its officers and Managers regarding the terms and conditions of purchase of the Membership Units and the business, financial affairs and other aspects of the LLC. The Member has also had the opportunity to obtain all information (to the extent the LLC possesses such information or can acquire it without unreasonable effort or expense) which the Member deems necessary or advisable to evaluate the investment and to verify the accuracy of information provided to the Member.

(e) Neither the officers, Managers, employees, agents nor any other person associated with the LLC has made any representations that (i) the Member may freely transfer the Units, (ii) that a specified profit or other amount will be realized as a result of the investment in the LLC, (iii) that past performance by officers, Managers or other persons in any way indicates a predictable investment return or overall business results for the LLC, (iv) that the LLC will be able to make cash distributions from operations or otherwise by a specified date, or that such distributions will be made at all, or (v) that the investment in Units will result in any specific tax benefits.

(f) The Member has been advised to consult with his or her own attorney and accountant regarding all legal and tax matters concerning an investment in the LLC, and the Member has done so to the extent the Member considers necessary. The Member has and will in the future look solely to and rely upon his or her own advisers regarding the tax consequences of this investment.

## ARTICLE 18. MISCELLANEOUS PROVISIONS

### Section 18.01. Severability

If any provision of this Agreement is declared by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall continue in full force and effect.

### Section 18.02. Counterparts

This Agreement may be signed in several counterparts, and all counterparts so executed shall constitute one agreement which shall be binding on all of the parties. It shall not be necessary for all Members to sign the same copy of this Agreement.

### Section 18.03. Arbitration.

If there is a dispute which cannot be resolved by or among the Members and/or Managers arising out of or concerning this Agreement or the LLC, the dispute shall be resolved by binding arbitration in Durant,

Defs.AP&KP-022

Oklahoma in accordance with the Rules of the American Arbitration Association. Judgment on the award may be entered in any court having jurisdiction thereof. The arbitration proceedings shall be limited to one day of oral hearings in order to reduce costs and expenses..

### Section 18.04. Successors

Subject to the restrictions against assignment of interests contained herein, this Agreement shall inure to the benefit of and shall be binding upon the heirs, successors in interest, assigns, personal representatives, estates and legatees of each of the Members.

### Section 18.05. Entire Agreement

This Agreement and the Articles of Organization for the LLC contain the entire understanding among the Members and supersede any prior written or oral agreements respecting the subject matter contained herein. There are no representations, agreements, arrangements or understandings, oral or written, between or among the Members relating to the subject matter of this Agreement that are not set forth herein.

### Section 18.06. Third Party Beneficiaries

There are no third party beneficiaries to this Agreement.

### Section 18.07. Waiver of Conflict of Interest

Each of the Members and other parties to this Agreement understand and acknowledge that (a) each Member has been and is hereby advised to seek and consult with independent legal and investment counsel regarding the legal and investment consequences to him or her arising from or in connection with this Agreement; (b) there is an inherent conflict of interest among the parties to this Agreement because the LLC, Members, Managers, officers and employees have conflicting rights, interests, responsibilities and liabilities in the formation, operation and dissolution of the LLC; and (c) each Member waives any and all objections to such conflicts of interest.

DATED: _____9/16/09_____, 2009

SAI, LLC

By _____, Manager
        Arvind C. Patel

By _____, Manager
        Nayana Patel

Defs.AP&KP-023

MEMBERS:

_____
Arvind C. Patel

_____
Nayana Patel

_____
Ashvin Patel

_____
Kamu Patel

Defs.AP&KP-024

## SCHEDULE A

Arvind C. Patel                                    130 units
901 W. Main
Durant, OK 74701

Nayana Patel                                       125 units
901 W. Main
Durant, OK 74701

Ashvin Patel                                       125 units
3006 Frando Dr.
Arlington, TX 76010

Kamu Patel                                         120 units
3006 Frando Dr.
Arlington, TX 76010

Defs.AP&KP-025



I-2010-630140  Book 1254  Pg: 114
05/14/2010  1:48 pm  Pg 0114-0117
Fee:    $ 19.00    Doc:   $ 3,750.00
Tammy Reynolds - Bryan County Clerk
State of Oklahoma

## WARRANTY DEED
### (INDIVIDUAL)

**STATE OF OKLAHOMA**
**Bryan County**
Documentary Stamps $ _3,750.00_

KNOW ALL MEN BY THESE PRESENTS:

That, **DURANT HOSPITALITY, INC.,** an Oklahoma corporation, party of the first part, in consideration of the sum of Ten and more ($10.00) Dollars, the receipt of which is hereby acknowledged, do by these presents grant, bargain, sell and convey unto **SAI, LLC,** 901 West Main Street. Durant. OK 74701, party of the second part, the following described real property and premises, situated in Bryan County, State of Oklahoma, to-wit:

A part of the NW/4 NE/4 NW/4 of Section 31, Township 6 South, Range 9 East of the Indian Base and Meridian, in Bryan County, Oklahoma described as BEGINNING at a concrete nail found 1558.92 feet East and 207.12 feet South of the Northwest corner of said Section 31, said nail being in the South right-of-way line of U.S. Highway 70 as described in Dedication Deed recorded in Book 394 at Page 467; Thence South 00 degrees 04 minutes 22 seconds West a distance of 110.37 feet to a nail found at the base of a concrete retaining wall; Thence South 72 degrees 41 minutes 11 seconds East a distance of 135.08 feet to the corner of said curb; Thence South 00 degrees 08 minutes 14 seconds West 236.54 feet to a 1/2" steel rod found in the North right-of-way line of the Saint Louis & San Francisco Railroad; Thence North 73 degrees 03 minutes 13 seconds West along said right-of-way line a distance of 375.32 feet to a 3/4" steel rod found; Thence North 00 degrees 08 minutes 28 seconds East a distance of 347.93 feet to a railroad spike found in the said South right-of-way line of U.S. Highway No. 70; Thence South 73 degrees 01 minutes 00 seconds East along said right-of-way line a distance of 240.40 feet to the Point-of-Beginning.

LESS AND EXCEPT all oil, gas, and other minerals outstanding of record and LESS AND EXCEPT all other oil, gas, and other minerals which are hereby specifically reserved unto Grantors.

R.S. S3,750.00

together with all the improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same.